## CAUJOLLE'S APPEAL.

*Supreme Court, First District; General Term, December, 1857.*

APPEAL FROM SURROGATE.—RECEPTION OF EVIDENCE.

On appeal from a final decree of a surrogate, the Supreme Court may receive newly discovered evidence in addition to the evidence which was before the surrogate.*

---

* PEOPLE *a.* RICHARDSON (*Supreme Court, First District; Special Term, At Chambers, November,* 1859).—This was a *habeas corpus* to procure the discharge of the prisoner who was in custody on a charge of larceny.

INGRAHAM, J.—The affidavits made before the police-justice show that the prisoner proposed to Little to retain the money of his employer, which he was sent to obtain from the bank. Knowing the money to be the property of Winslow, Lanier & Co., he took the money from Little and concealed it. It is not by any means clear that on this evidence the prisoner could not be convicted of grand larceny. The money was the property of the firm, although in the possession of their servant, and if taken from the servant without his consent, it would clearly have been a larceny. The assent of the servant would not alter the nature of the offence.

But if it amounts to nothing more than an embezzlement, the evidence is

Appeal from the surrogate of the city and county of New York.

Jeannie Du Lux died in the city of New York, November, 1854, intestate, and leaving a very large amount of personal property. None of her kin resided in New York, and accordingly the surrogate granted letters of collection on her estate. to the public administrator. In December, 1854, Ferrie, the respondent on this appeal, filed his petition with the surrogate, praying for letters of administration on the decedent's estate, on the ground that he was her child, and only child, and consequently her sole and next of kin and heir. This was denied by the public administrator and by distant relatives of the decedent, named Caujolle, natives and residents of France. One of these. relatives, the appellant here, also applied for letters of administration. The questions involved were whether the petitioner Ferrie was the son of the decedent, and if her son, whether he was legitimate.

The surrogate decided in favor of the legitimacy of Ferrie, and granted his application. Caujolle appealed to the Supreme Court.

---

ample to sustain the charge against the prisoner of receiving the property of another, knowing it to have been embezzled, and the only ground on which the discharge of the prisoner is sought is, that the clerk was under eighteen years of age when the embezzlement was committed. If this be true, the crime of embezzlement could not be charged upon Little, and the prisoner would not of course be liable under that charge. The district-attorney now offers additional proof to show that Little is mistaken as to his age, and that he is over nineteen years of age. I think that such evidence may be taken now.

Section 58 of the *habeas corpus* act provides " that if the prisoner appears to have been legally committed for the offence, or if he appear by the testimony offered *with the return*, or *on the hearing*, to be guilty, the court shall remand him," &c. This contemplates an examination of the evidence returned by the magistrate, or of evidence offered on the hearing, and allows such evidence then to be received.

Besides this, although I should discharge him on this writ, if the district-attorney has the necessary evidence, he should at once apply for a new commitment on such proof, and it would be my duty to commit him anew thereon.

It would not be a creditable administration of justice to discharge a prisoner from custody on such a technical objection, when the district-attorney offers to supply the defect in the evidence, and produce sufficient testimony fully to establish the guilt of the prisoner.

The evidence may be received, and on producing proof that the correct age of Little is over eighteen years, the prisoner must be remanded.

Before the appeal came on to be heard, the appellant presented a petition asking leave for a commission to procure and produce on the appeal further evidence, and for a stay of the proceedings on the appeal meanwhile.

The petition, after reciting briefly the proceedings before the surrogate, continued as follows:

"And your petitioner further shows that all the proofs which your petitioner at that time could produce, and on which the said surrogate based his decision and his decree, are contained in the return made by said surrogate to this honorable court.

"That since the argument of this matter before said surrogate, your petitioner has discovered the following additional documents, being certificates and acts of public record—recorded in the department of France where the respondent was born, and where the said deceased resided the first portion of her life; and your petitioner has also discovered the following named witnesses that can testify to the following additional facts, not heretofore known or proven before the said surrogate."

The newly discovered documentary evidence is as follows:

[Here followed a statement of each matter of evidence sought to be introduced, naming and describing the respective witnesses, and the several sources of documentary evidence, and stating in detail what would be proved by each; and also a statement of the circumstances which had precluded the appellant from offering the evidence before the closing of proofs before the surrogate.* The petition concluded as follows:]

"And your petitioner represents that said proofs are necessary and important to a full consideration of this cause, and a full ascertainment of the facts therein, that from the circumstances of his position, though earnestly trying, he has been unable to produce them before the court below; and he now, therefore, prays that he may be allowed to produce said further testimony on the appeal, and also that a commission rogatory may issue from this honorable court, directed to any judge of any court of the Empire of France to whom such commission may come, requiring him to take the hereinbefore-mentioned proof, and trans-

---

* That part of this evidence which consisted of public documents had been offered before the surrogate as soon as it was discovered, but this being after the proofs and argument were closed, the surrogate refused to receive it.

mit the same under the seal of his court, to the justices of this
honorable court; and that, in the mean time, and until the re-
turn of said commission, the argument of this appeal be stayed,
and such further," &c.

By order of the court, the argument of the motion and of the
appeal were heard together; and the counsel for the respondent
entered into the following consent:

"A motion having been made by the appellant in this ac-
tion, for leave to introduce new evidence, and also that a com-
mission rogatory issue for the purpose of taking new testimony
in the Empire of France, it is hereby consented, on the part of
the respondent, that in case the court shall conclude that said
motion should be decided in favor of the appellant, that the
testimony set forth in the petition of said appellant may be re-
ceived in evidence, to the same extent, and with the same effect
as though the said commission had issued, and the witnesses had
testified, in the same manner as stated in the petition."

*Charles E. Whitehead*, for the motion.—I. This court has the
power to receive new evidence on the hearing of appeals from
decisions rendered in the Surrogate's Court. The American
Courts of Admiralty and Probate are derived from like courts
in England, and have continued the practice of the civil law as
in use in those courts. 1. As to the practice in the Ecclesiasti-
cal and Admiralty Courts of England. (See 1 *Burns' Eccl. Law*,
64 *b, c, d;* 1 *Brown's Civ. & Adm. Law,* 500 ; Consent Prac-
tice of Eccl. Courts, 3 *Blackst.'s Com.*, 455.) 2. As to the con-
tinuation of the English system by our earlier courts of civil
law, and the changes of those courts to the present time. (See
1 *Bradf. R.*, Introductory Essay.) The colonial law regulating
administration was passed by the General Assembly, November
11, 1692. It indicates who shall be administrator, and directs
appeal to be taken to the governor as judge of the Probate
Court. The judge of the Court of Probates of this State shall
be vested with all and singular the powers and authorities, and
have the like jurisdiction in testamentary matters, except as
herein afterwards otherwise provided, as the governor or com-
mander-in-chief of the late colony in New York had and exer-
cised as judge of the Prerogative Court or Court of Probates
of said colony. (*Act April* 8, 1813, § 1.) Section 24 provides

appeals to be made to the judge of the Court of Probates. The act of March 21, 1823, abolished the Probate Court, and directed the appeal to be made to the Chancellor, and provided that after the appeal such further proceedings should be had thereon as right and justice should require. The act of May 12, 1847, abolished the Court of Chancery, and left the present Supreme Court as its successor with all its equity powers, and among others the power of issuing commissions. (*Story's Eq. Jur.*, § 1514.) In those of our courts adopting the civil law, viz., the Admiralty and Surrogate's Courts, the practice to hear new evidence on appeals has not been altered, and is still in constant use. 3. As to the Admiralty Courts. (See Wisecart *a.* Dauchy, 3 *Dall.*, 327; Anonymous, *Gallison*, 22; *Bened.'s Adm.*, §§ 586, 483, and cases there cited; Yeaton *a.* United States, 5 *Cranch*, 281; Clarissa Clairborne, 7 *Ib.*, 107.) 4. As to the Surrogate's Court. (See Boynton *a.* Dyer, 18 *Pick.*, 1, 4; Washburn *a.* Washburn, 10 *Ib.*, 374; Van Wyck *a.* Alley, 1 *Hopk.*, 552; Scribner *a.* Williams, 1 *Paige*, 550; Vanderheyden *a.* Reid, 1 *Hopk.*, 409; Case *a.* Towle, 8 *Paige*, 479.)

II. This case is one where the discretionary power of the court ought to be exercised, and the appellant be permitted to introduce further evidence, because of the controlling effect of the order appealed from, and the uncertain evidence on which it is based.

III. The new testimony, being only attainable by a commission to be issued to France, should be taken by a commission rogatory, because—1. This is the regularly authorized means of obtaining testimony in foreign countries, and by foreign courts in this country. (Nelson *a.* The United States, 1 *Pet. C. C. R.*, 236, note *a;* Jay & Clerke, 5 *Sandf. R.*, 674; *U. S. Stats. at Large*, 107, passed January 24, 1827; An amendment of the same Act, passed March 2, 1855, 2 *Bradf. R.*, 258, 264.) 2. The ordinary form of a commission has been unsuccessful in this instance.

*Patterson & Eastman, Flamen Ball*, and *Charles O'Conor*, opposed.—I. In considering the cause, this court will review the case upon the pleadings and testimony, as it has been certified up by the surrogate, and affirm or reverse his sentence and decision, as the demands of justice may require. 1. This is the

general rule, as prescribed by the Code of Procedure (§ 335). 2. But if the rule prescribed by the Code is deemed inapplicable, on an appeal from the decision of the surrogate, then the rule prescribed by the statute, regulating appeals from surrogates, must govern. (2 *Rev. Stats.*, 4th ed., 817, § 18.) 3. The objection that this provision applies only to wills, is not well taken, because the greater includes the less, and as this standard is fixed by the statute in respect of wills, and none other is established in respect of intestate estates, it follows, that the rule of the statute will be held to apply in all cases of appeals from surrogates. 4. This court has no power to go behind the case made before the surrogate and admit new proofs, for that, in effect, would nullify the statute, by presenting a different case from that passed upon by the surrogate. Whereas, this court is called upon " to affirm or reverse the decision of the surrogate, as shall be just," and it is, therefore, necessary that this court should confine itself to the surrogate's return, in order to determine whether his decision be right or wrong. 5. In adopting rule 77, it is evident that this court did not contemplate the admission of new testimony in such cases. (*Vide Rule* 77.) 6. The most that the Chancellor decided in Scribner *a.* Williams (1 *Paige*, 550); Foster *a.* Tyler (7 *Ib.*, 48), and Case *a.* Towle (8 *Ib.*, 479), was, that courts which proceed according to the course of the civil law, may allow the introduction of new allegations, and new proofs, on appeals from inferior jurisdictions, but that such a practice was not a matter of course. But this court, in this case, proceeds under the statute, and it will be governed by the statute. It does not proceed according to the course of the civil law. 7. Neither does the learned surrogate, in his preliminary note (1 *Bradf.*, 26), hold that the civil law possesses any authority, *proprio vigore*, in his court (as it does not in this court), but that its principles prevail in the Spiritual Courts only so far as custom and prescription have admitted it, and so far, and so far alone, it has become a part of the common law. And even in England, in the Spiritual Courts, the canons, constitutions, ordinances, and synodals provincial, existing in the time of Henry VIII., not repugnant to the law of the land, were, by statute, expressly authorized to be used in the Ecclesiastical Courts, until a review of the canon law could be had by the thirty-two persons provided for by that statute. (25

Caujolle's Appeal.

*Henry VIII.*, c. 19.) This statute was revived and confirmed by 1 *Elizabeth* (c. 1, § 6). No such review has ever been had. 8. The rule of practice that the court will confine itself to the surrogate's return, for which we contend in this case, is in strict analogy with the established practice of this court in all other cases of appeals from inferior jurisdictions. A general exception to a general charge (or decision) amounts to nothing. The party objecting must put his finger on the alleged error, at the time it occurs, so as to give the judge making it an opportunity to retrace his steps. It is too late to make it, for the first time, in the appellate court. (Lansing *a.* Wiswell, 5 *Den.*, 218 ; Jones *a.* Osgood, 2 *Sheld.*, 233 ; Hart *a.* R. & S. R. R., 4 *Ib.*, 37 ; Acker *a.* Ledyard, 4 *Ib.*, 62 ; Caldwell *a.* Murphy, 1 *Kern.*, 416.) 9. On an appeal, only such parts of the judgment as are appealed from can be reviewed. (Kelsey *a.* Western, 2 *Comst.*, 500.) 10. No appeal has ever been taken from any decision of the surrogate refusing a rehearing, or refusing to issue a commission rogatory, or refusing to receive new testimony. It is now too late to take such an appeal. (2 *Rev. Stats.*, 4th ed., 818, 625.) 11. The surrogate, in his decision rendered in June, 1855 (Case, 594), decided as follows : " The commission *rogatoire*, invoking the aid of foreign tribunals, in the form suggested by the counsel for the French claimants, presents no advantages, and is exposed to the objection that it removes the investigation from the control of this court, and from the operation of those rules of evidence which prevail in American tribunals." (1 *Greenl. Ev.*, § 320.) 12. There is nothing presented in any of the pleadings, or developed in any of the testimony, to warrant this court, if it possessed the discretionary power to do so, to depart from the established practice, and issue a commission to take further testimony.

II. The proposed testimony set forth in the petition of the appellant, even if the court has the power, or the desire to introduce it, is either immaterial, cumulative, or incompetent.

THE COURT* HELD, that the evidence offered should be received on the appeal, and upon all the evidence they affirmed

---

* Present, CLERKE, MITCHELL, and PEABODY, JJ.

Harley a. Ritter.

the surrogate's decree upon the merits. That part of the order entered thereupon which related to the question of the reception of the evidence was as follows (after reciting the consent stated above): "It is hereby declared that the court has concluded that the motion of the appellant in said argument should be decided in favor of the appellant, and thereupon, in pursuance of said agreement of said respondent, it is adjudged by this court that the testimony set forth in the petition of said appellant be, and the same is hereby received in evidence, to the same extent and with the same effect, as if a commission had duly issued, and the witnesses had testified, in the same manner as it is stated in said petition that they would testify. And, thereupon, on considering the said evidence thus introduced on said motion, and the evidence before the surrogate, it is further ordered, that the said judgment-order or decree of the surrogate, in the said matter of administration be, and the same is hereby in all things affirmed."

## HARLEY a. RITTER.

*New York Common Pleas ; Special Term, November,* 1859.

PLEADING.—SEPARATE ANSWER OF MARRIED WOMAN.

A married woman may put in a separate answer, without leave of court, in an action respecting property which she claims as her separate estate.

Motion to strike out answer as irregular.

This was a creditor's action, brought by the plaintiff against John Ritter, the judgment-debtor, Sarah his wife, and one Palm. The complaint charged that Ritter conveyed certain real property to Palm without consideration, and that Palm conveyed it to Sarah Ritter, the wife, without consideration, and that the conveyances were fraudulent as against creditors; and it sought judgment setting aside the conveyances, and applying the property to payment of plaintiff's judgment; with the usual prayer for a receiver and an injunction.